IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BOBBY JOE MCCOLLUM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00680-BP |
| | § | |
| ANDREW M. SAUL, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

Plaintiff filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **AFFIRMS** the Commissioner's decision.

**I.     STATEMENT OF THE CASE**

Plaintiff was born on November 27, 1968 and has a limited education. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 14-1 at 25.  He filed several applications for disability insurance benefits ("DIB") under Title XVI. Tr. 13. His most recent application was filed on April 12, 2013, but it was denied at the initial level on July 19, 2013. *Id.* Plaintiff did not appeal this denial. *Id.*

Plaintiff filed an application for SSI on January 12, 2017, alleging that his disability began on January 1, 2007. *Id.* On the date he filed the application, he was 48 years old, which is defined as a younger individual. Tr. 25. The Commissioner initially denied his claim on June 14, 2017 and denied it again upon reconsideration on September 19, 2017. Tr. 13. Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Herbert J. Green on October 16, 2018,

in Fort Worth, Texas, with Plaintiff and his attorney present. Tr. 13, 44. The ALJ issued an unfavorable decision on November 21, 2018, finding that based on the application for SSI, Plaintiff was not disabled. Tr. 26.

In the decision, the ALJ employed the statutory five-step analysis and established during step one that Plaintiff had not engaged in substantial gainful activity since January 12, 2017. Tr. 15. At step two, he determined that Plaintiff had the severe impairments of degenerative disc disease in the cervical and lumbar spine, major depressive disorder (MDD), and generalized anxiety disorder (GAD). *Id*. He found that Plaintiff had several other impairments that were not categorized as severe impairments. Tr. 16-18. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18. He found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b). The claimant must have the option to sit or stand. He cannot climb, crawl, kneel, or squat but can occasionally stoop and crouch. He cannot use the arms above shoulder level and cannot constantly use the hands. Mentally, the claimant retains the capacity to understand, remember, and carryout only SIMPLE instructions, make simple decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in a routine work setting. He cannot interact with the public but can superficially interact with coworkers and supervisors.

Tr. 20 (emphasis in original). At step four, the ALJ found that Plaintiff is unable to perform his past work as a plumber or as a plumber supervisor. Tr. 24-25. At step five, the ALJ found that jobs that Plaintiff could perform existed in significant numbers in the national economy, so a finding of "not disabled" was appropriate. Tr. 25-26.

The Appeals Council denied review on July 2, 2019. Tr. 4-6. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v.*

*Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   STANDARD OF REVIEW

Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA governs the supplemental security income in addition to numerous regulations concerning supplemental security income (SSI). *See* 20 C.F.R. § 416 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to SSI, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 416.920. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 416.920(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 416.972(a)–(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 416.920(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC, which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant

3

from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197–98; 20 C.F.R. § 416.920(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

Plaintiff raises two issues on appeal. He claims that the ALJ erred by (1) improperly evaluating his RFC and (2) failing to use substantial evidence in evaluating his subjective complaints. ECF No. 19 at 11, 18.

#### A. The ALJ properly evaluated Plaintiff's RFC.

Plaintiff argues that the ALJ erred by formulating an independent RFC based on raw evidence contained in the record and rejecting all pertinent opinions. *Id.* at 13. He further argues that the ALJ did not adequately consider Plaintiff's upper extremity issues, and this error was harmful to the analysis at step-five. *Id.* at 17. Finally, he argues that the RFC lacks substantial evidence for determining that Plaintiff must have the option to sit or stand at work. *Id*. In response, the Commissioner argues that substantial evidence supports the RFC determination, as demonstrated by both the medical and non-medical evidence contained in the record. ECF No. 20 at 3-4. He also asserts that while Plaintiff relied on one physician's opinion regarding limitations on his upper extremities, the ALJ properly relied on other medical examinations that noted either normal or minimal impairments to Plaintiff's upper extremities. *Id.* at 6-7. Finally, the Commissioner contends that Plaintiff's representative at the hearing before the ALJ did not argue that the record needed additional medical evidence to be fully developed. *Id.*

By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and

(d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 416.945.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* at § 416.945(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* at § 416.945(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 416.945(d). As will be shown below, the ALJ properly considered all of McCollum's functional limitations.

Plaintiff asserts that the ALJ created the RFC based on his own conclusions and rejected "all pertinent opinions" regarding Plaintiff's impairments and work capacity. ECF No. 19 at 12. Plaintiff contends that the ALJ accepted only certain parts of the medical opinions that agreed with his predetermined RFC and ignored the other parts of the opinions. *Id.* at 13. Plaintiff argues that accepting only portions of medical opinions does not constitute substantial evidence to support the ALJ's RFC determination. *Id.* Plaintiff's argument is not persuasive on the facts of this case.

When determining the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence

6

in the record. 20 C.F.R. § 416.945(a)(3). Plaintiff has not shown a lack of credible evidence or medical findings that support the ALJ's RFC finding. Plaintiff argues that the ALJ's language in his decision highlights the assertion that "the ALJ made up his own RFC and then compared the opinion evidence to it." ECF No. 19 at 13. However, it is the claimant who bears the burden of presenting evidence of disability, and the ALJ's duty is to develop all relevant facts, not to collect all existing records. *See Audler*, 501 F.3d at 448; *Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). To upset the ALJ's decision, the plaintiff must show that there was insufficient evidence for a reasonable person to reach the same conclusion as the ALJ, not that some contradictory evidence might exist. *Newton*, 209 F.3d at 453. As opposed to cases cited by Plaintiff, the ALJ here did not independently develop his own RFC and reject all pertinent medical opinions. ECF No. 19 at 12. Plaintiff's disagreement with the ALJ's wording of the RFC does not carry his burden of establishing that no substantial evidence supports the ALJ's determination. As a result, reversal of the ALJ's opinion is not required on this point.

Plaintiff also argues that the ALJ did not properly consider the physical impairments of Plaintiff's upper extremities. ECF No. 19 at 14. Plaintiff asserts that because the non-examining sources did not have access to certain medical examinations and found no limitations in the upper extremities "the ALJ had no guidance in assessing Plaintiff's upper extremities." *Id*. Plaintiff claims that the ALJ's omission constituted harmful error because if he would have considered these impairments, the ALJ would have placed more restrictions on Plaintiff. *Id.* at 15-16. The ALJ cited numerous examination records in his decision, including those cited by Plaintiff. Tr. at 21-24. The ALJ noted that Plaintiff had reduced strength in his arms and reduced reflexes in both his arms and his wrists. Tr. 23. Additionally, the ALJ noted that his current ailments included

"weakness in the hand and forearm." *Id*. Thus, substantial evidence supported the ALJ's conclusion, despite Plaintiff's disagreement with his conclusion.

Further, Plaintiff argues that the ALJ's determination that Plaintiff must have a sit/stand option lacks substantial evidence to conclude this was the appropriate limitation. ECF No. 19 at 17. However, the ALJ cited several medical examinations that detailed Plaintiff's physical impairments that affected his ability to sit and stand for long periods. *See generally*, Tr. 20-23. Additionally, the Commissioner notes that during the administrative hearing, Plaintiff's counsel "did not request the ALJ to obtain a medical source statement or otherwise indicate that the record needed additional development." ECF No. 20 at 7.

Plaintiff has not shown a lack of credible evidence or medical findings that support the ALJ's RFC. Tr. 20. Instead, he argues that the record is insufficient to adequately assess his physical impairments in his upper extremities and to maintain an option to sit/stand for six hours a day. *See*, *e.g.*, ECF No. 19 at 13-16. As noted above, Plaintiff must demonstrate a lack of substantial evidence to overturn the ALJ's decision, not simply other evidence that contradicts the ALJ's conclusion. Plaintiff's disagreement with the ALJ's RFC finding does not meet his burden here, and reversal of the ALJ's decision is not required on this point.

## B. The ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff argues that the ALJ erred by not properly evaluating his subjective complaints regarding his spinal and mental impairments. ECF No. 19 at 18. He argues that the ALJ's determination that his medical history showed little to no medical treatment was not accurate and that the he did not give specific reasons for his decision. *Id.* at 18-19. The Commissioner argues in response that the ALJ properly evaluated Plaintiff's subjective complaints by weighing the results of multiple physical examinations, the conservative nature of his treatment, lack of

8

limitations placed on him by his doctors, and the amount of treatment he received. ECF No. 20 at 8.

"The responsibility for determining a claimant's RFC lies with the ALJ . . . [and] the ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence." *Ewing v. Colvin*, No. 4:13-CV-085-A, 2014 WL 2464765, at *4 (N.D. Tex. June 2, 2014) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990); SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996)). Moreover, "[t]he ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). Instead, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations) . . . ." SSR 96-8p, 1996 WL 374184 at *7.

Plaintiff argues that the ALJ improperly relied on the evidence of little to no medical care for spinal or mental impairments to determine that his pain was not as severe as alleged. ECF No. 19 at 18. However, subjective complaints of pain must be corroborated by objective evidence. *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989). Pursuant to SSR 96-7p, an ALJ assessing a claimant's allegations of symptoms such as pain or fatigue must conduct an objective-subjective, two-step analysis. *Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008) (per curiam). In the first, objective step, the ALJ must determine whether an impairment exists that could reasonably be expected to produce the claimant's symptoms. *Id.* If the ALJ identifies an impairment at step one, the ALJ proceeds to the second, subjective step and "considers the applicant's statements about symptoms and the remaining evidence in the record to determine the strength of the

symptoms and how the symptoms affect the applicant's ability to do basic work." *Id.* at 459. This requires a credibility finding regarding the applicant's claims about symptoms. *Id.*

The ALJ need not "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected," but is required "to explain his reasons for rejecting a claimant's complaints of pain." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). Pursuant to SSR 96-7p and 20 C.F.R. § 416.929(c)(3), an ALJ employs a seven-factor analysis to assess the claimant's credibility regarding subjective allegations of pain or fatigue:

> (1) plaintiff's daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms; (5) treatment, other than medication, undertaken to relieve pain or other symptoms; (6) any other measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

*Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005) (citing 20 C.F.R. § 416.929(c)(3)). Although the ALJ must explain his reasons, "neither the regulation nor interpretive case law requires that the ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Id.* at 871 (citing *Shave v. Apfel*, 238 F.3d 592, 595 (5th Cir. 2001)). Further, "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's "evaluation of the credibility of subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Villa*, 895 F.2d at 1024.

The ALJ's evaluation of Plaintiff's subjective complaints of pain and fatigue is sufficiently specific to make clear that he considered the regulatory factors. The ALJ identified the proper legal

standards, stated the parameters of the objective-subjective, two-step analysis he was required to undertake, and proceeded in compliance with the proper legal standards. Tr. 20-24. After considering the evidence, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms at step one. Tr. 21. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of symptoms were not entirely consistent with the medical evidence in the record. *Id.*

To support this determination, the ALJ acknowledged Plaintiff's testimony where he discussed his symptoms. Tr. 20-21. The ALJ recited the following subjective complaints made by Plaintiff at the hearing: (1) limitations in daily activities such as the ability to lift over 10 pounds, stand longer than 10 minutes, walk more than half a block at a time, bend, climb, kneel, reach, and use his hands; (2) constant muscle spasms; (3) side effects caused by medication resulting in dizziness, disorientation, and mood swings; and (4) ability to remember, concentrate, complete tasks, understand, follow directions, handle stress, and get along with others. *Id.*

The ALJ's credibility determination did not stop with merely acknowledging Plaintiff's alleged symptoms and limitations. After reciting the medical evidence in the record from treating physicians, consulting physicians, and other sources, the ALJ provided reasons for discounting the severity of Plaintiff's alleged pain and fatigue and the extent to which they affected his ability to work. Tr. 23. He noted: (1) the record reveals that Plaintiff sought little to no medical care for his spine or mental impairments, even though he was receiving treatment for other impairments; (2) the treatment he received was minimal and effective; (3) he submitted no evidence of ongoing treatment for any mental impairments ; and (4) all his physical examinations were essentially benign. Tr. 21–23. He concluded Plaintiff had pain and fatigue that, while noticeable, was manageable with medication such that he could control the residual back and neck pain from his

remote injuries and past surgeries. Tr. 24. The ALJ also concluded that based on the evidence in the record, there was no basis to limit Plaintiff to any more than light work, but the evidence did support a finding that Plaintiff should be limited to performing simple instructions with limited interactions with others. *Id.*

The medical evidence relied on by the ALJ supports the RFC determination. Plaintiff's physical examinations did not show the progressive physical deterioration that is expected when pain and fatigue result in totally disabling symptoms as he alleged. Tr. 18-21. Plaintiff's medical examinations during the relevant period consistently were normal, and no physical limitations were noted, which supports the ALJ's determination. *Id.* Specifically, Plaintiff's examining physician, Rajbur Sandhu, M.D., examined him on numerous occasions starting in February 2017. Tr. 295-297, 386-397, 411-416. Despite Plaintiff's allegations of constant, debilitating pain, Dr. Sandhu consistently observed, among other things, normal range of motion, no sign of edema, and inconsistent tenderness. *See id*. Another treating physician, Anupa Seth, M.D., examined Plaintiff on March 21, 2018, at the pain management center. Tr. 772-779. Dr. Seth noted that Plaintiff's "pain and disability are not concordant with the visible pathology." Tr. 778. Plaintiff returned to the pain management center in June 2018, but Dr. Seth observed that his physical examination was substantially the same as the March 2018 exam. Tr. 645-652. Further, Plaintiff attended physical therapy once in April 2018, but was discharged because he was unable to follow directions and participate in therapy at the time. Tr. 821-822. The physical therapist, Aleshia Saverine, P.T., noted moderate impairments in Plaintiff's range of motion, strength, and flexibility. *Id.* However, she did not note any significant abnormalities. *Id*.

Finally, the ALJ considered the opinion evidence of Gregory Phillips, M.D., the State Agency Medical Consultant (SAMC), and the limitations that were placed on Plaintiff when he

was in prison. Tr. 23. The SAMC initially determined Plaintiff could perform light work with occasional kneeling and crawling. *Id.* After reconsideration, the SAMC increased Plaintiff's capability to increased kneeling and crawling. *Id.* The ALJ gave this opinion some weight. *Id*. Dr. Phillips concluded that Plaintiff's complaints were only partially consistent with the objective evidence. Tr. 69-73, 82-96. The ALJ gave only some weight to Dr. Phillips' conclusions. Tr. 23. Dr. Phillips' findings indicated, among other things, there was a reduced range of motion and tenderness in the lumbar section. *See* Tr. 286-291. He determined Plaintiff's physical impairments limited his ability to stand, walk, lift, and carry. *Id*. Further, the ALJ considered Plaintiff's prison restrictions which limited him to a "lower bunk, lift limit of 20 pounds, no repetitive squatting, and no climbing." Tr. 1169. These reports supported the ALJ's observation that Plaintiff "received little or no care for spine problems or mental impairment issues." Tr. 21.

The ALJ also discussed psychological examinations related to Plaintiff's mental impairments, noting "the combined effects of pain and residuals from his untreated mental impairments" reduced Plaintiff's RFC. Tr. 22. Specifically, on August 18, 2017, Beatrix Wagner, Psy.D., performed a psychological examination. Tr. 277-282. Dr. Wagner diagnosed Plaintiff with MDD and GAD. *Id.* She noted, among other findings, symptoms associated with feeling sad, helpless, worthless, isolating himself, and becoming easily irritable. Tr. 281. Further, Dr. Wagner opined that with appropriate mental health and psychiatric treatment Plaintiff's prognosis is fair. *Id*. The ALJ incorporated Dr. Wagner's assessment that Plaintiff could understand and remember 1-step and 2-step instructions, and had a diminished ability to remember, concentrate, and get along with others. *Id*.

"The record indicates that the ALJ used the medical information provided by [Plaintiff] to determine [his] residual functional capacity for work. Under the regulations and [Fifth Circuit]

case law, the determination of residual functional capacity is the sole responsibility of the ALJ." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Thus, substantial evidence in the record supports the ALJ's RFC determination. Moreover, although the ALJ did not enumerate his findings related to the credibility factors listed above, the ALJ's decision as a whole reveals he considered all the evidence, including Plaintiff's history, medical records, the SAMCs' assessments, prison records, and Plaintiff's testimony. *Andrews v. Astrue*, 917 F. Supp. 2d 624, 646 (N.D. Tex. 2013) ("[T]he ALJ's decision as a whole reveals that he considered all the evidence, including [claimant's] history, medical records, medical opinions, and [claimant's] own testimony, before concluding that [claimant's] subjective complaints were not credible to the extent that she alleged."). Thus, the ALJ's conclusion is sufficiently specific, and substantial evidence supports his determination discounting Plaintiff's subjective complaints based on the intensity, persistence, and limiting effects of his spinal and mental impairments. Reversal is not warranted on this ground.

## IV. CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Plaintiff has not shown that reversal of the decision is required, the Commissioner's decision is **AFFIRMED.**

It is so **ORDERED** on August 31, 2020.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE